# COURT OF APPEALS OF TEXAS.

## TYLER TERM, 1887.

### No. 2470.

WILLIAM SMITH AND LEE COKER *v.* THE STATE.

1. INDECENT PUBLICATION—THE INDICTMENT, setting out *in hæc verba* the obscene and indecent composition, charged that the appellants "did unlawfully make and publish an indecent and obscene written composition, manifestly designed to corrupt the morals of youth." *Held*, that the indictment is sufficient; and that, the composition being set out *in hæc verba*, it was unnecessary that the indictment should allege the manner and means of the making of the same, or the circumstances attending the publication thereof. How and where the composition was made and published were matters of proof, and not pleading.

2. CONSTRUCTION OF WRITTEN INSTRUMENTS—CHARGE OF THE COURT.— The duty of determining whether or not a written composition is indecent and obscene devolves upon the court and not upon the jury. The composition in this case, as set out in the indictment, and as adduced in evidence, consisted of the words, "Ass hole work." *Held*, that, in construing such composition to be obscene and indecent, and in so instructing the jury, the trial court did not err.

3. SAME—STATUTE CONSTRUED.—The terms "manifestly designed to corrupt the morals of youth," as used in the statute (Penal Code, art. 343), refer to the intention obtaining in the making and publication of the composition; i. e., that the design and purpose of the party making and publishing the composition was to corrupt the morals of youth. The said terms can not be construed to mean that the composition, upon its face, and of itself, must manifestly be of a kind to corrupt the morals of youth. The charge of the trial court, conforming to this construction, was correct.

4. INDECENT PUBLICATION—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for indecent publication.

APPEAL from the County Court of Henderson. Tried below before the Hon. W. L. Faulk, County Judge.

The conviction in this case was for indecent publication, and the penalty assessed by the jury was a fine of twenty-five dollars against each of the appellants.

Morrison Bass was the first witness for the State. He testified, in substance, that, on Sunday, August —, 1886, he attended divine service at Cox's Chapel, in Henderson, county, Texas, and occupied a seat on a bench with the defendants on trial. While the congregation was kneeling at prayer, the defendants, each having an open pocket knife in hand, employed their time in carving on the back of a bench in front. Witness saw each of them cutting on the bench, but could not, at the time, distinguish the characters cut by either of them. After church was dismissed the witness saw the words "Ass hole work" engraved on the back of the bench at the point where he saw the defendants cutting. He could not tell which of the letters or words were cut or engraved by the defendant Smith, or which by the defendant Coker. He knew, however, that the words were not engraved on the bench when the services began, and when he and the defendants took their seats on the bench immediately behind.

Taylor Martin, the next witness for the State, testified that he attended divine service at Cox's chapel on the occasion referred to by the witness Bass. After the services were over, his attention was called to the words "Ass hole work" roughly engraved on the back of one of the benches, and he helped others to erase it. He did not see the engraving made, and was unable to say that it was not on the bench before the services began on that day   Cox's chapel was used as a neighborhood school house and church.

The State closed.

The substance of the testimony of James Keebles, the single witness for the defense, was to the effect that before the conclusion of divine service at Cox's chapel, on the Sunday referred to by the witnesses for the State, he took a seat on the same bench occupied by the defendants and Marion Bass. No cutting was done on any of the benches, so far as he saw, while he was in the chapel. He saw no engraving of any kind on any of the benches either during or after service. No engraving was called to his attention at any time. Neither of the defendants had a pocket knife out while the witness was in the church.

The motion for new trial raised the questions discussed in the opinion.

---

---

*J. B. Bishop*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE.    It is alleged in the indictment that the defendants "did unlawfully make and publish an indecent and obscene written composition, manifestly designed to corrupt the morals of youth," and the written composition is then set forth *in hœc verba*.    We think the indictment is sufficient, and that the exceptions thereto were properly overruled.    It was unnecessary to allege the manner or means of making and publishing the composition, or the circumstances attending the making and publishing thereof.    It was set forth in the indictment by its tenor, and it was thus made certain what composition it was that the defendants were charged with making and publishing.    How and where it was made and published were matters of proof and not of pleading.    (The State v. Hanson, 23 Texas, 232.)

Exceptions were taken by defendants to the charge of the court, which are earnestly insisted upon in this court.    Considering the charge as a whole, we are of the opinion that it is correct and sufficient.    The composition being a written one, it was the province of the court to construe it and determine whether or not it was indecent and obscene.    In construing it to be indecent and obscene, and in so instructing the jury, we think there was no error. The question as to whether or not it was manifestly designed by the defendants, in making and publishing said composition, to corrupt the morals of youth, was fairly and fully submitted to the jury.    We do not agree to the proposition contended for by counsel for defendants, that the words, "manifestly designed to corrupt the morals of youth," mean that the composition upon its face, and of itself, must manifestly be of a kind to produce that effect.    We construe these words to refer to the *intention*— the *purpose*—of the defendants in making and publishing the composition.    It must have been manifestly designed, that is, intended and purposed by them to corrupt the morals of youth, by making and publishing such composition.    This was the view entertained by the trial judge, and fully explained to the jury in his charge.

We think the verdict of the jury is in accordance with the charge and the law, and is sustained by the evidence, and that there is no error in the conviction.    The judgment is affirmed.

*Affirmed.*